UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| GREGORY HALL, *et al.*, | No. C 08-03447 CW (LB) |
| Plaintiffs,<br>v. | **ORDER RE DISCOVERY DISPUTES IN NOVEMBER 29, 2010 JOINT LETTER** |
| APARTMENT INVESTMENT AND MANAGEMENT, *et al.*, | [ECF No. 127] |
| Defendants. | |

On November 29, 2010, Plaintiffs Lloyd Thibeaux and Robert Ivy – who allege race discrimination by contractors and subcontractors against them on a construction project in the Bayview/Hunter's Point – filed a joint discovery letter with Defendant subcontractor Bay Area Construction Framers, Inc. about discovery disputes. *See* Fourth Amended Complaint, ECF No. 58 at 6-11; Joint Discovery Letter, No. ECF No. 127. Plaintiffs want to depose the following persons; (1) Pat O'Neill and Russ Thorsted; (2) Ken Walker and Terri Lorenz; and (3) a person most knowledgeable of Bay Area Construction's electronically-stored information, payroll systems, and work on other jobs during the same time period as this construction project. *See* ECF No. 127. Following a telephonic hearing on December 16, 2010, the Court rules as follows.

**1. Depositions of Pat O'Neill and Russ Thorsted**

According to Plaintiffs, previously they deposed only two employees of Bay Area Construction: John Buettner and Steve Silva. Joint Discovery Letter, ECF No. 127 at 2. Now they want to depose

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Pat O'Neill (John Buettner's direct report).  *Id.*   This is relevant to a claim or defense, Plaintiffs say,
2  because John Buettner reported to O'Neill and also was the foreman of the interior trim crew where
3  Plaintiff Robert Ivy worked.  *Id.*  The allegation is that Buettner discriminated against Ivy (who is
4  African-American). *Id.*  Buettner apparently testified at his deposition that O'Neil hired Ivy,
5  assigned him to Buettner's crew, did not communicate requirements about hiring local residents for
6  the workforce (which is part of the claims about discriminatory workplace practices) (*see* Fourth
7  Amended Complaint, ECF No. 58 at 6-11), and communicated with Buettner about Ivy's work
8  performance.  Joint Letter, ECF No. 127 at 2.

Plaintiffs also want to depose Russ Thorsted, who was Steve Silva's direct report.  *Id.*  Silva was
foreman of Bay Area Construction's framing crew and supervised Lloyd Thibeaux.  *Id.*   The
allegation is that Silva discriminated against Thibeaux, and that Thorsted communicated about the
requirements of hiring local residents and communicated with Silva about Thibeaux's work.  *Id.*

Defendant does not dispute that the two depositions are relevant to a claim or defense.  *Id.* at 8
(agreeing to the two depositions but proposing limiting further depositions); *see* Fed. R. Civ. P.
26(b)(1).  Accordingly, the court orders the two depositions.

**2.  Depositions of Ken Walker and Terri Lorenz**

Plaintiffs want to depose Ken Walker, Bay Area Construction's Vice-President, and Terri
Lorenz, the President.  ECF No. 127 at 4-6.

Walker said in his verified discovery responses that Plaintiffs were equally qualified as Bay Area
Construction's "core crew" employees to perform the tasks they were assigned, but that his opinion
did not represent the views of Bay Area Construction.  *Id.*  Thus, Plaintiffs assert, his deposition is
relevant about Plaintiffs' qualifications.  *Id.*

In his verified discovery responses, Lorenz said that Bay Area Construction's hiring practices
were race neutral (despite the requirement to make good-faith efforts to hire at least 50% local
residents in a predominantly African-American neighborhood).  *Id.*  This is relevant, Plaintiffs say,
to whether or not race was a hiring consideration.  *Id.*  Lorenz also apparently provided information
about the use of computers (which is related to the issue in the next section about a deposition of the
person most knowledgeable about computer use at Bay Area Construction).  *Id.*

As a compromise, Plaintiffs suggest deferring determining whether depositions should be taken of Walker and Lorenz until after the depositions of O'Neil and Thorsted. *Id.* The court agrees. According to the parties, depositions of O'Neil and Thorsted will be taken in the beginning of January 2011. If Plaintiffs still want to depose Walker and Lorenz after those depositions, they shall meet and confer with Defendant and file a joint discovery letter about any dispute by January 15, 2011. If the parties need more time in which to meet and confer and submit a joint letter, they may submit a joint stipulation to the court proposing a new date for submission of the joint letter.

**3. Deposition of Person Most Knowledgeable about Electronically-Stored Information (ESI)**

Plaintiffs want information about ESI and other issues apparently set forth in an email on October 26, 2010, from Plaintiff's counsel Pamela Kong to Defendants' counsel. Joint Letter, ECF No. 127 at 6. That email is not attached to the joint letter. During the meet-and-confer that this court requires for discovery disputes, the parties limited the issues (reserving the other issues for later) to the following: (1) certain ESI about the hard drives that were used during the construction project in the Bayview/Hunter's Point, including how they were maintained, the retention of data, and the location of retained data; (2) Bay Area Construction's payroll systems; and (3) other jobs that Bay Area Construction performed during the construction project, which is relevant to whether other "core" employees of Bay Area Construction went to other jobs while Plaintiffs were discriminatorily denied those opportunities. *Id.* at 6-7.

Bay Area Construction does not dispute that discovery is appropriate but contends only that the deposition should be conducted by written questions with an oral deposition to follow if the written questions do not resolve the issue . *Id.* at 8. The point of this process is to avoid expense.

At the December 16 hearing, the court suggested, and the parties agreed, to the following informal methods of resolving the access issues that Plaintiffs initially proposed addressing by deposing persons most knowledgeable.

1. <u>ESI</u>. The parties clarified that Defendant had responded that the electronic information no longer existed and agreed that responses to written interrogatories likely would resolve the issue. Should that procedure not be sufficient, the parties may raise any additional issue with the court in a joint letter following the in-person meet-and-confer required by this court's standing order.

2. <u>Payroll records</u>.  At the hearing, Plaintiffs suggested that there were discrepancies between certain internal payroll records that they had received and the certified "Elations" payroll records that Bay Area Construction produced.  Because the internal records are housed on a proprietary system, the parties agreed that Bay Area Construction will make the records available for inspection on the proprietary platform.  A person knowledgeable about the payroll system and access will be available to explain how the system operates and to facilitate access.  Thereafter, the parties will meet and confer about how to produce any additional data or records.  Possibilities discussed included a protective order about the use of the proprietary platform, production in a comma-delineated format suitable for viewing in another platform, or making arrangements through the licensor.  If this process does not resolve the issue, the parties may address it further with the court in accordance with this court's discovery procedures.

3. <u>Data about other jobs</u>.  According to the parties, this request was made in late October 2010.  Bay Area Construction now has prepared a comprehensive spreadsheet detailing the other jobs it performed during the construction project at Bayview/Hunter's Point, where each employee worked, and how long each employee worked.  According to Bay Area Construction, because it does not have a single person most knowledgeable with respect to the other jobs, the spreadsheet represents the collective input of numerous individuals within the company who have knowledge of the information contained therein.  Defendant will produce this spreadsheet.  Plaintiffs clarified – and Defendant acknowledged – that while the discovery dispute was about designating a person most knowledgeable, the request for production contemplated discovery of the underlying data for the spreadsheet.  After receipt of the spreadsheet and underlying data, the parties will meet and confer about any production issues regarding the associated data.  If there is a further dispute, the parties may raise it with the court in accordance with this court's discovery procedures.

This disposes of ECF No. 127.*

**IT IS SO ORDERED.**

Dated: December 16, 2010

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California