IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY HALL, et al.,

    Plaintiffs,

  v.

APARTMENT INVESTMENT AND MANAGEMENT COMPANY; AIMCO CAPITAL, INC.; FORTNEY & WEYGANDT, INC.; IMR CONTRACTOR CORPORATION; BAY BUILDING SERVICES; BAY AREA CONSTRUCTION FRAMERS, INC.; ALL HALLOWS PRESERVATION, LP; BAYVIEW PRESERVATION, LP; LA SALLE PRESERVATION, LP; and SHOREVIEW PRESERVATION, LP,

    Defendants.

No. C 08-03447 CW

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT (Docket No. 209)

Plaintiffs Gregory Hall, Fausto Aguilar, Gonzalo Aguilar, Charles Chilton, Douglas Givens, Quincy Mouton, Richard Rankin, Hector Rodriguez, Arnulfo Carranza-Rivas and Terry Mackey[1] move for leave to amend their complaint to add Moises Avila and Ismael Avila (collectively, the Avilas) as Defendants. Defendant IMR Contractor Corporation opposes the motion, even though Plaintiffs' claims against it are stayed because of its bankruptcy. No other Defendant joined IMR's opposition. The motion will be decided on the papers. Having considered the papers submitted by the parties, the Court GRANTS Plaintiffs' motion.

---

[1] Although twenty-eight Plaintiffs were at one time a part of this case, the parties' April 11, 2011 stipulation states that these ten individuals are the remaining Plaintiffs asserting claims.

BACKGROUND

Because the Court's previous orders amply summarize this case, only the background necessary to resolve this motion is provided below.

This action arises from alleged unlawful labor and employment practices of entities involved in the rehabilitation of four apartment communities in the Bayview-Hunter's Point neighborhood of San Francisco, California. Specifically, Plaintiffs charge IMR, their alleged former employer, with multiple violations of California's wage-and-hour laws and Fair Employment and Housing Act (FEHA).

Plaintiffs seek to amend their complaint to add allegations that support alter ego liability against the Avilas for IMR's conduct. Their proposed amendments include allegations that "IMR was a corporation wholly owned, managed and controlled by MOISES AVILA and ISMAEL AVILA" and that the Avilas "did not maintain adequate corporate records" and treated "IMR's assets as their own." Pls.' Mot. at 2-3. Plaintiffs also intend to allege that "IMR did not hold corporate meetings and did not keep minutes for the corporation" and that "IMR has been undercapitalized, does not own any real property, and has threatened bankruptcy while the AVILAS own several real properties." Id. at 3. Finally, Plaintiffs wish to aver that the failure to pierce the corporate veil would allow "the AVILAS to avoid payment of wages to their employees and to avoid any liability for discriminating against Plaintiffs." Id. at 2.

On May 19, 2011, after briefing on Plaintiffs' motion closed,

2

IMR filed for bankruptcy protection.  Thus, as noted above, Plaintiffs' claims against IMR are stayed.

Currently, there are no non-defaulting Defendants against which Plaintiffs have active claims.  On April 26, 2010, default was entered against Defendant Bay Building Services (BBS).  (Docket No. 80.)  On February 18, 2011, the Court granted summary judgment in favor of Defendant Fortney & Weygandt on the claims brought against it.  (Docket No. 182.)  On April 11, 2011, pursuant to stipulation, Plaintiffs' claims against Defendant Bay Area Construction Framers were dismissed from this action.  (Docket No. 208.)  Finally, on May 10, 2011, all remaining claims against Defendants Apartment Investment and Management Company; AIMCO Capital, Inc.; All Hallows Preservation, L.P.; Bayview Preservation, L.P.; La Salle Preservation, L.P.; and Shoreview Preservation, L.P. (collectively, AIMCO) were settled.[2]  (Docket No. 210.)

Under the case management order, the deadline to add claims and parties was March 16, 2009.  (Docket No. 35.)

## DISCUSSION

Because the deadline to add claims and parties has passed, Plaintiffs must satisfy Federal Rule of Civil Procedure 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Where a schedule has been ordered, a party's ability to amend its pleading is governed by this good cause standard, not the more liberal standard of Rule

---

[2] The parties have not yet stipulated to the dismissal of the remaining claims against AIMCO.

3

15(a)(2).  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).  In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification.  Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  If good cause is shown, under Rule 15(a)(2), courts consider five factors in deciding whether to grant leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint.  Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

IMR opposes Plaintiffs' motion on multiple grounds.  IMR contends that Plaintiffs have not established good cause to amend their complaint and that they unduly delayed seeking leave to amend.  However, Plaintiffs' proposed amendments stem from their desire to collect any judgment against IMR, which constitutes good cause.  Further, under the Federal Rules of Civil Procedure and California law, a plaintiff may move to amend a complaint -- even after judgment -- to add a defendant for the purpose of executing a judgment.  See Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148 (9th Cir. 2004) (stating that Rule 69(a), in conjunction with California Code of Civil Procedure § 187, grants courts authority to "amend a judgment to add additional judgment debtors"); NEC Elecs., Inc. v. Hurt, 208 Cal. App. 3d 772, 778-81 (1989).  Because Plaintiffs could have sought to add the Avilas even after the entry of judgment, any delay in naming them as Defendants does not warrant denying their motion for leave to amend.

4

1  IMR also contends that it will suffer prejudice because it
2  will be required to expend additional resources if the Avilas are
3  added to this action. This argument is unavailing. Plaintiffs'
4  claims against IMR are currently stayed pending resolution of its
5  bankruptcy petition.

6  Finally, IMR argues that amendment would be futile. First, it
7  contends that the relevant statutes of limitations bar any recovery
8  against the Avilas. However, a

> claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice.

Shaoxing Cnty. Huayue Import & Export v. Bhaumik, 191 Cal. App. 4th 1189, 1199 (2011) (citation and internal quotation marks omitted). Plaintiffs are not seeking to add new substantive claims for relief against the Avilas for conduct that occurred outside the limitations period. Instead, Plaintiffs are seeking to impose alter ego liability against the Avilas for the claims brought against IMR, which IMR does not contend are time-barred.

IMR also argues that amendment would be futile because Plaintiffs' allegations are not sufficient to support alter ego liability against the Avilas.[3] For alter ego liability to be

---

[3] IMR also points to evidence that it contends contradicts or undercuts Plaintiffs' allegations. However, whether Plaintiffs have sufficient evidence to support their claims against the Avilas is not at issue on this motion. The futility analysis tests the legal sufficiency of Plaintiffs' pleadings. See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1051-52 (9th Cir. 2008).

5

imposed, two requirements must be met: (1) "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist" and (2) "there must be an inequitable result if the acts in question are treated as those of the corporation alone." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (2000). Factors a court may consider include the commingling of funds and assets, "inadequate capitalization," and the "disregard of corporate formalities." Id. at 538-39. Plaintiffs intend to plead that IMR was undercapitalized and did not observe corporate formalities or maintain adequate corporate records. Plaintiffs also contend that the failure to pierce the corporate veil would permit the Avilas to escape liability for their alleged failure to comply with state wage-and-hour laws and the FEHA. These proposed amendments satisfy both requirements for alter ego liability.

Because their proposed amendments are supported by good cause and would not be futile, Plaintiffs will be permitted to amend their complaint to add the Avilas as Defendants and assert claims against them based on an alter ego theory of liability.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend their complaint is GRANTED. (Docket No. 209.) Within three days of the date of this Order, Plaintiffs shall file an amended complaint that reflects the amendments proposed in their motion. Plaintiffs' amended pleading shall be served on the Avilas within seven days of the date it is filed. Within twenty-one days of the

6

date it is served on them, the Avilas shall respond. If the Avilas intend to file any dispositive motion, such as a motion to dismiss, motion for judgment on the pleadings or a motion for summary judgment, it must be filed at that time. If a dispositive motion is filed, Plaintiffs' opposition shall be due fourteen days thereafter. The Avilas' reply shall be due seven days after that. Any dispositive motion will be taken under submission on the papers, unless the Court indicates otherwise.

    A final pretrial conference will be held on August 9, 2011 at 2:00 p.m. A jury trial is expected to begin on August 22, 2011 at 8:30 a.m.

    IT IS SO ORDERED.

Dated: 5/24/2011

    CLAUDIA WILKEN
    United States District Judge

7